**NORTHWESTERN SAVINGS AND LOAN
ASSOCIATION, a corporation,
Plaintiff and Appellant,**

v.

**C. A. BAUMGARTNER, Treasurer of Cass
County, North Dakota, Defendant
and Respondent.**

No. 8135.

Supreme Court of North Dakota.

Aug. 31, 1965.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for plaintiff and appellant.

Eugene A. Kruger, State's Atty., Fargo, for defendant and respondent.

TEIGEN, Judge.

The plaintiff, a savings and loan association, has appealed from a judgment dismissing its complaint by which it seeks recovery of 1961 personal property taxes paid under protest. A trial anew is demanded.

Chapter 357, Session Laws of North Dakota for 1961 (Section 57–02–08, Subsection 12, N.D.C.C.), became law July 1, 1961. It provides, among other things, that:

"All personal property of any insurance company, bank or banking association, building and loan association, savings and loan association, or rural electric co-operative, which is subject to a lieu tax upon gross premiums, gross earnings, or net income * * *"

is exempt from taxation.

The plaintiff's personal property was assessed with reference to its value on April 1, 1961. Tax was levied pursuant to that assessment. The tax which plaintiff seeks to recover, amounting to $654.49, was paid under protest about October 19, 1962.

Chapter 357, Session Laws of North Dakota for 1961 (Chapter 57–35.1, N.D. C.C.), in addition to providing the exemption set forth above, also imposes the "lieu tax" upon savings and loan associations referred to in the above-quoted statute. The plaintiff paid the first tax imposed by this statute on January 22, 1963. It was levied in 1962 and computed on its net income for 1961.

The plaintiff contends that the collection of personal property taxes for the year 1961, which taxes were assessed against its personal property prior to July 1, 1961, but became due on January 1 of the following year (Section 57–20–01, N.D.C.C.), is violative of the uniformity provisions of Section 176 of the North Dakota Constitution and also constitutes double taxation, and therefore, is an illegal exaction. The plaintiff in its brief epitomizes its argument as follows:

"(1) The statute specified January 1, 1961, as the effective date and consequently the only tax which could be legally collected from the Association was the one based upon its 1961 income.

"(2) Since a tax was levied and collected based upon its 1961 income, the

tax against its personal property for the year 1961 constituted double taxation and violated the constitutional prohibitions against lack of uniformity as well as the 'in lieu' statute itself."

The defendant argues that, although Chapter 357, Session Laws of North Dakota for 1961, went into effect as a law July 1, 1961, it did not become operative until January 1, 1962; and that, although measured by the 1961 net income of the plaintiff, the tax was not levied until 1962, is not a tax for the year 1961, and did not interfere with the levy and collection of 1961 personal property taxes. The trial court adopted the view of the defendant and dismissed the plaintiff's complaint. In the conclusions of law and in the judgment it is stated:

"That Chapter 57–35.1 did not become effective until July 1, 1961, and hence said chapter could not become effective for the year 1961 but its provisions could only be complied with and become operative in 1962."

Chapter 357, Session Laws of North Dakota for 1961, imposes a license or franchise tax upon building and loan associations, which include savings and loan associations, for the grant to them of the privilege of transacting or for the actual transacting by them of business within this State. It provides the tax is in lieu of all other taxes or impositions (State, county and local), except taxes upon the real property of the associations. Thus it imposes a new tax not theretofore known to these associations. It also amended Subsection 12 of Section 57–02–08, N.D.C.C., exempting such associations from personal property taxation if they are subject to a lieu tax upon gross premiums, gross earnings, or net income.

The sole question in this case is whether the first license or privilege tax imposed under Chapter 357, Session Laws of North Dakota for 1961, was a 1961 tax and thus constituted a tax "in lieu" of the 1961 personal property tax upon the plaintiff association.

The first nine sections of Chapter 357, Session Laws of North Dakota for 1961, are a complete and independent statutory tax enactment and are not dependent upon or aided by any previously existing tax law. For the purpose of interpretation and application, these sections must be read together. A statute must be construed as a whole and with a view of arriving at the intent of the legislature. Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542. It is a revenue statute and ordinarily revenue statutes are to be construed strictly and will not be extended by implication beyond the clear import of the language used. 82 C.J.S. Statutes § 396.

Section 1 of Chapter 357, Session Laws of North Dakota for 1961, contains definitions. Section 2 provides in part:

"An annual tax is hereby imposed * * * for the grant * * * of the privilege of transacting, or for the actual transacting * * * of business within this state during any part of each tax year, *commencing January 1, 1961*." (Emphasis supplied.)

The emphasized portion of the above quote creates the confusion and had it been omitted there would have been no problem in construing the statute. Section 2 also provides that the tax "shall be based upon and measured by the net income of each association for the preceding calendar year" and computed at the rate of four per cent of such net income with a minimum of $50.00. The problem arises because the following three sections (Sections 3, 4, and 5) of the statute provide the mechanics for the actual determining, levying, and paying of the tax imposed. They are not in harmony with the commencement date of January 1, 1961. The statute does not carry an emergency clause and did not become effective until July 1, 1961. The procedure required by Sections 3, 4, and 5 clearly provide that the duties imposed thereby must be performed before July 1. Section 3 requires that a report, under oath, showing the net income of the association for the

preceding calendar year must be filed with the State Tax Commissioner on or before March 1. Section 4 provides that the State Tax Commissioner shall compute the tax and certify the same to the county auditor of each county in which the taxpayer is located on or before April 1 and that the county auditor, after receiving the computation of the tax from the commissioner, shall promptly certify the same to the county treasurer for collection. Section 5 provides that the tax shall become payable on the fifteenth day of April following the submission of the report of the previous year's net income to the State Tax Commissioner under Section 3 and that the tax becomes delinquent on or before May 15 next following.

In other words, if it was intended that the tax should be levied for the year 1961, as stated in Section 2, the act itself made it absolutely impossible for the taxpayer, the State Tax Commissioner, the county auditor, and the county treasurer to comply with the procedure or mechanics established by the following three sections of the statute. That part of Section 2 providing the annual tax to be imposed shall commence January 1, 1961, and shall be based upon and measured by the net income for the preceding calendar year (1960) is absolutely irreconcilable with Sections 3, 4, and 5.

■■ The statute is not clear and free from ambiguity and in construing it we are not governed by Section 1–02–05, N.D. C.C., providing that where a statute is clear and free from all ambiguity the letter of it is not to be disregarded under the pretext of pursuing its spirit. Section 1–02–07, N.D.C.C., provides that whenever there is a general provision in a statute which shall be in conflict with a special provision, the two shall be construed, if possible, so as to give effect to both provisions or, if it cannot, the special provision shall prevail; however, this rule is not applicable because in this statute the provisions are all special and consequently are of the same stature.

■ Section 1–02–08, N.D.C.C., provides that, except as otherwise provided by Section 1–02–07 (not applicable here), whenever in the same statute several clauses are irreconcilable, the clause last in order of date or position shall prevail. See also Markel v. Glassmeyer, 137 Neb. 243, 288 N.W. 821. This is the rule we must apply.

We said in the syllabus of City of Dickinson v. Thress, 69 N.D. 748, 290 N.W. 653, as follows:

"Where it is manifest upon the face of a statute that an error has been made in words, numbers, grammar or punctuation, the court in construing and applying the statute, will correct the error in order that the intention of the Legislature as gathered from the entire act may be given effect."

■ The Attorney General of the State released two conflicting opinions on the question. After the passage of the statute and before its effective date, the Attorney General ruled that the first tax imposed under the statute would be a 1961 tax. In a second opinion issued August 24, 1962, he reversed his stand and held that the first tax imposed under the statute is a 1962 tax, rather than a 1961 tax. He premised his latter opinion on much of the reasoning used in our determination of the question. It appears that the latter of the two opinions is the opinion followed by the State Tax Department. We think the latter opinion is the better reasoned opinion.

It is clear to us that Chapter 357 of the Session Laws of North Dakota for 1961 was a desire on the part of the legislature to enact a tax similar to that imposed upon banks and trust companies under Chapter 270 of the Session Laws of 1941. It imposed a tax beginning in the year 1942, which was the year following the effective date of the statute. It, too, is a license or privilege tax to transact business and is based upon net earnings of the taxpayer for the preceding calendar year.

For the reasons aforesaid, we apply the rule of interpretation set forth in Section 1-02-08, supra, and hold that the clauses last in order of position prevail. The statute became effective July 1, 1961, but the first tax under the statute was imposed for the year 1962. This is in harmony with the Attorney General's opinion and departmental application and it makes the statute clear and unambiguous. The tax was imposed and levied for the year 1962 and, therefore, is not "in lieu" of the personal property tax levied in 1961.

In view of our construction of the statute, there is no double taxation and we, therefore, do not pass upon the question of whether Section 176 of the Constitution applies.

The judgment is affirmed.

BURKE, C. J., and ERICKSTAD, J., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.

STRUTZ, Judge.

I dissent. The majority opinion holds that the law in question imposed the first "lieu tax" in the year 1962, and that therefore the personal property of the plaintiff savings and loan association was not exempt from taxation for the year 1961. The opinion completely ignores the fact that this statute imposes an annual tax upon savings and loan associations for the privilege of transacting business within the State during any part of the tax year, "commencing January 1, 1961." The tax is measured by the net income of the association for the "preceding calendar year," the levy being four per cent of the net income, with a minimum tax of fifty dollars. This tax is in lieu of all other State, county, and local taxes, except taxes upon the real property of an association. It is therefore in lieu of its personal property taxes.

It is impossible for me to read this statute without concluding that it levied a tax on such association for the privilege of doing business from and after July 1, 1961. Thus the provisions of the Act became effective and applicable to business done by such association for the last half of 1961. It requires that the tax for that period be measured by the net income of the association as determined from a report filed with the Tax Commissioner before March 1, 1962. The year 1961 is the "preceding calendar year" mentioned in the statute. The amount of the tax is determined by four per cent of the 1961 income, with a minimum tax of fifty dollars. That is the proper tax due from the plaintiff for 1961 for the privilege of doing business during that year. And, under the provisions of this Act, this tax is in lieu of personal property taxes for that period.

By holding that the first "lieu tax" imposed is in the year 1962, the majority members of the court are closing their eyes to the clear language of the statute, and are imposing a personal property tax for 1961 contrary to the clear language of this law. Personal property of savings and loan associations was specifically exempted from taxation from and after July 1, 1961. On that date, no personal property taxes had been levied for 1961. Personal property taxes for 1961 had not become a lien on the property of the owners. The Act contains no provision delaying its effective date or allowing levying of personal property taxes after its effective date. After the exemption became effective, no lien or liability could be perfected. This was the clear intent of the legislative enactment, and to hold, as does the majority, that this law did not become effective until 1962 is contrary to the legislative intent and contrary to Section 67 of the North Dakota Constitution which provides that all Acts of the Legislature shall take effect on July 1 following the close of the legislative session at which they were enacted unless the Legislature, by a two-thirds vote, declares an Act to be an emergency measure.

For reasons stated herein, I would reverse the judgment of the district court.